# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# SOUTHERN DIVISION

FATE SANTEE                                                                                           PLAINTIFF

VS.                                                                    CIVIL ACTION: 1:14cv34-HSO-RHW

RON KING, *et al.*                                                                                DEFENDANTS

## REPORT AND RECOMMENDATION

Before the Court is [33] a December 9, 2014 motion for summary judgment based on sovereign and qualified immunity filed by Defendants Ron King, former Superintendent at South Mississippi Correctional Institute (SMCI), and Hubert Davis, the Warden at the facility. This is a 28 U.S.C. § 1983 prisoner civil rights lawsuit filed February 3, 2014, by Fate Santee, while he was at SMCI serving a sentence for conviction of aggravated assault. Santee has since been released, as reflected in [20] a notice of change of address which he filed on May 20, 2014. Santee filed no response to Defendants' motion; in fact, his last filing in the case was the May 2014 change of address.

Santee claims Defendants King, Davis and a John Doe defendant who was the tower officer on the date of the incident at issue violated his constitutional rights by failing to protect him from being attacked by other inmates on July 11, 2013. On April 30, 2014, the Court conducted a screening/omnibus hearing in the case, at which Santee, King and Davis all consented to the exercise of jurisdiction by the United States Magistrate Judge. However, subsequent to the hearing, the John Doe tower officer defendant named in the complaint was identified as former Mississippi Department of Corrections (MDOC) officer Jodeci A. Dearborn, and Dearborn was substituted for the John Doe Defendant by order [22] entered May 22, 2014. Summons issued and was served, but Dearborn has made no appearance in the action. [23], [28]

For the reasons which follow, the undersigned is of the opinion summary judgment should be granted and Santee's claims against Defendants King and Davis, dismissed.

Facts

According to Santee's pleadings and testimony, at about 4:30 a.m. on July 11, 2013, soon after the inmates on his zone returned from breakfast, some inmates indicated to him that he needed to leave. Santee stated in his complaint that he had seen inmates in the back gathering shanks and broom sticks and putting locks in socks. He testified he had done nothing to precipitate any attack, that there was no reason for it,[1] but an inmate had been beaten up by other inmates the previous day and he did not want to be next. He went to the tower located in the middle of the building, knocked on the box and asked the tower officer to open the door and let him (Santee) out into the hallway and close the door behind him. When the officer asked why, Santee says he told him some inmates were probably going to try to do something to him. The officer inquired as to where and who the inmates were, and stated he would call somebody, but Santee told him he (Santee) did not have time for that. Santee testified the officer was trying to get him to explain what was going on, but he (Santee) wanted to be let out into the hall first. He complains that the tower officer did not comply with his request quickly enough,[2] and several inmates ultimately came up and attacked Santee in front of the tower, inflicting multiple wounds. After the beating, the tower officer let Santee exit the zone into the hallway, and also opened another door to let him leave the building. Another officer, responding to the situation, met Santee and escorted him to the infirmary, and from there he was taken to a local hospital for

---

[1]Santee speculated he might have been attacked in retaliation for his reporting that gang members were hiding cell phones in the light fixture over his bed some four months earlier [1-6, p. 2], but then stated that he has no idea why they chose to attack him. He testified after the cell phone problem, he was moved to a different housing area.

[2]Santee testified he was at the tower area 10-15 minutes before the attack occurred.

treatment including stitches and staples. Santee alleged he was prescribed medications for inflammation, antibiotics for infection and prozac for depression; that he has pain and sleeping problems and takes Excedrin Migraine medication for headaches resulting from the assault.

Santee alleged that Defendants King and Davis are responsible for the operation of SMCI; that they failed to take corrective action in response to high rates of assault, gang activities, *etc.*; that they failed to provide adequate staff for the security of inmates in zones which have no effective surveillance system; and that they failed to control possession of tools or other items which inmates use to make weapons, *e.g.* broomsticks and pieces that inmates break off fans in the housing units and fences on the prison yard.

In addition to monetary damages, Santee seeks an injunction requiring King and Davis to install surveillance cameras in certain areas in the prison; to remove "all materials and elements ... that inmates use to make weapons;" and to require that he not be housed at SMCI Area 2.

## Summary Judgment Standard

Under Rule 56(a), FED.R.CIV.P., summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A material fact is one that might affect the outcome of the suit under the governing law; a genuine dispute exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment bears the initial burden of identifying those portions of the pleadings and discovery on file, together with any affidavits, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant carries its burden, the burden shifts to the non-movant to show that summary judgment should not be granted. *Id.*, 477 U.S. at 324-25. The non-movant

may not rest upon mere allegations or denials, and conclusory allegations will not suffice to defeat a summary judgment motion. *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996). To rebut a properly supported motion for summary judgment, the opposing party must show by "significant probative evidence" that there exists a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "If the party with the burden of proof cannot produce any summary judgment evidence on an essential element of his claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

King and Davis urge that they are entitled to summary judgment in this case based on sovereign (Eleventh Amendment) immunity and qualified immunity.

## **Sovereign Immunity**

There is no dispute that King and Davis are employees of the Mississippi Department of Corrections (MDOC), or that MDOC is an arm of the State of Mississippi which enjoys Eleventh Amendment[3] immunity. *Williams v. Mississippi Dept. of Corrections*, 2012 WL 2052101 at *1 (S.D. Miss. 2012); *Dandridge v. Mississippi*, 2009 WL 4940105, at *5 (S.D. Miss. 2009), holding that, "Neither states nor officials of the state sued in their official capacity are amenable to suit under 42 U.S.C. § 1983 because they are not considered 'persons' within the meaning of the statute." (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989).

> The Fifth Circuit has stated: "Eleventh Amendment immunity operates like a jurisdictional bar, depriving federal courts of the power to adjudicate suits against a state." *Union Pac. R. Co. v. La. Pub. Serv. Comm'n*, 662 F.3d 336, 340 (5th Cir. 2011)(internal citations omitted)). "The Eleventh Amendment grants a State immunity from suit in federal court by citizens of other States, and by its own citizens as well." *Lapides v. Bd. of Regents*, 535 U.S. 613, 616, 122 S.Ct. 1640, 152 L.Ed. 2d 806 (2002)(citation omitted). Indeed, "[t]he amendment has been

---

[3]"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

> judicially construed to bar federal jurisdiction over suits brought against a state by its own citizens, despite the absence of language to that effect." *See*, *Jagnandan v. Giles*, 538 F.2d 1166, 1177 (5th Cir.), *cert. denied*, 432 U.S. 910, 97 S.Ct. 2959, 53 L.Ed.2d 1083(1977)(internal citations omitted). Both federal and state law claims are barred from being asserted against a state in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 119-21, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984).

*Yul Chu v. Mississippi State University*, 901 F.Supp.2d 761, 771 (N.D. Miss. 2012). The immunity "extends to any state agency or entity deemed an 'alter ego' or 'arm' of the state," *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002), and "to state officials sued in their official capacities because such a suit is actually one against the state itself." *Yul Chu*, 901 F.Supp.2d at 771(citations omitted).

Santee makes no allegation that either King or Davis was personally involved in the incident of which he complains; his claims based solely upon their supervisory positions at the prison cannot stand, as liability under § 1983 may not be based on *respondeat superior*, but only on the supervisor's own wrongful acts or omissions. Section 1983 does not "create supervisory or *respondeat superior* liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). *See also*, *Thompkins v. Belt*, 828 F.2d 298, 303-304 (5th Cir. 1987)(supervisory officials cannot be held vicariously liable under § 1983 for actions of subordinates). Liability under § 1983 must be based on more than the right to control employees, or simple awareness of employees' misconduct. *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003). No evidence has been presented to the Court to show that King and Davis knew of, much less intentionally disregarded, a substantial risk of serious harm to Santee before he was attacked. Santee's pleadings and testimony show even he had no reason to anticipate the attack until just moments before it occurred.

Santee's allegations that King and Davis are responsible for the operation of SMCI, that they failed to prevent inmates from improvising weapons, gang activities, and violence, or to provide adequate staff for the security of inmates in zones without effective surveillance systems are claims against King and Davis in their official capacities and as such are claims against the state itself.  Santee's request for an injunction requiring installation of surveillance cameras in certain areas of the prison, and to preclude his being housed at SMCI 2 are likewise official capacity claims for which Movants have immunity.  Furthermore, the injunctive relief claims are rendered moot by virtue of Santee's having been released from custody almost a year ago.  *See*, *Oliver v. Scott*, 276 F.3d at 741 ("transfer of a prisoner out of an institution often will render his claims for injunctive relief moot"); *Zajrael v. Harmon*, 677 F.3d 353, 355 (8th Cir. 2013) ("suit against state employees in their official capacities is the functional equivalent of a suit against the State"); *Daniels v. Waller*, 2006 WL763115 at *1 (S.D. Miss. 2006).  Since Santee is no longer in custody and has not shown any reasonable expectation of being placed back in SMCI 2, his injunctive relief claims should be dismissed as moot.  *Oliver*, 276 F.3d at 741.

## **Qualified Immunity**

As MDOC officials whose positions involve the exercise of discretion, King and Davis assert they are entitled to qualified immunity insofar as Santee has sued them for damages in their individual capacities.  The doctrine of qualified immunity strikes a balance between the need to hold public officials accountable for exercising power irresponsibly and the need to shield from harassment, distraction and liability officials who perform their duties reasonably.  Qualified immunity protects government officials from liability for civil damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009)(citing *Harlow v.*

*Fitzgerald*, 457 U.S. 800, 818 (1982). Federal courts review qualified immunity claims under a two-step analysis: first considering "whether the facts alleged, taken in the light most favorable to the party asserting the injury, show the officer's conduct violated a constitutional right." *Price v. Roark*, 256 F.3d 364, 369 (5th Cir. 2001)(citing *Saucier v. Katz,* 533 U.S. 194, 201 (2001)). If the allegations fail to establish that the officer violated a constitutional right, he is entitled to qualified immunity. If the allegations could make out a constitutional violation, the Court must determine whether the right was clearly established, *i.e.*, whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted. *Price*, 256 F.3d at 369. Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). "Even if an official's conduct violates a constitutional right, he is entitled to qualified immunity if the conduct was objectively reasonable." *Salas v. Carpenter*, 980 F.2d 299, 310 (5th Cir. 1992). "If reasonable public officials could differ on the lawfulness of the defendant's actions, the defendant is entitled to immunity." *Id.*, (citing *White v. Taylor*, 959 F.2d 539, 544 (5th Cir. 1992)).

Santee's claimed constitutional violation is for Defendants' failure to protect him from attack by other prisoners. Prison officials have a duty under the Eighth Amendment to take reasonable measures to guarantee the safety of inmates, which includes a duty to protect them from violence at the hands of other prisoners. *Hill v. Thomas*, 326 F.Appx. 736, 737,(5th Cir. 2009)(citing *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). However, not every injury suffered by a prisoner at the hands of another prisoner rises to the level of a constitutional violation. Prison officials are not expected to prevent all inmate-on-inmate violence, but are charged with protecting incarcerated individuals from a known excessive risk to safety. *Adames v. Perez*, 331 F.3d 508, 512 (5th Cir. 2003).

To prevail on his claim for failure to protect under 42 U.S.C. § 1983, Santee had the burden to show he was "incarcerated under conditions posing substantial risk of serious harm and that prison officials were deliberately indifferent to his need for protection." *Newton v. Black*, 133 F.3d 301, 308 (5th Cir. 1998). Deliberate indifference "is an extremely high standard to meet." *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006). To be deliberately indifferent, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Neals v. Norwood*, 59 F.3d 530, 533 (5th Cir. 1995) (quoting *Farmer v. Brennan*, 511 U.S. at 837). Mere negligent failure to protect a prisoner from attack does not justify liability under section 1983. *Davidson v. Cannon*, 474 U.S. 344, 347-48 (1986); *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990).

Santee does not even allege that either King or Davis was present at the time he was attacked, or that either had any prior knowledge that he was in danger of being attacked by fellow prisoners. Indeed, Santee himself had no reason to anticipate the attack other than the warning he received just minutes before the attack occurred. The Court has been presented nothing to show that King and Davis were aware of any facts from which they could draw an inference that there existed a substantial risk of serious harm to Santee, much less that they drew such an inference. In light of this lack of evidence, the undersigned is of the opinion that Santee has failed to carry not only his burden to present a prima facie case of deliberate indifference to his safety by King and Davis, but also his burden to rebut their qualified immunity defense. *See Salas v. Carpenter*, 980 F.2d at 306; *Estate of Davis v. City of N. Richland Hills*, 406 F.3d 375, 380 (5th Cir. 2005).

## **RECOMMENDATION**

Based on the foregoing, the undersigned recommends that the motion for summary judgment filed by King and Davis be granted, and this case dismissed as to them.

## NOTICE OF RIGHT TO APPEAL/OBJECT

Under Rule 72(a)(3), *Local Uniform Civil Rules of the United States District Courts for the Northern District of Mississippi and the Southern District of Mississippi*, a party has 14 days after being served a copy of this Report and Recommendation to serve and file written objections to the Report and Recommendation. A party must file objections with the clerk of court and serve them upon the other parties and submit them to the assigned District Judge. Within seven days of service of the objection, the opposing party must either serve and file a response or notify the District Judge that he does not intend to respond to the objection. An objecting party must specifically identify the findings, conclusions, and recommendations to which he/she objects; the District Court need not consider frivolous, conclusive, or general objections. A party who fails to file written objections to the proposed findings, conclusions, and recommendations within 14 days of being served a copy shall be barred, except upon grounds of plain error, from attacking on appeal any proposed factual finding or legal conclusion accepted by the District Court to which he/she did not object. *Douglass v. United Services Services Automobile Association*, 79 F.3d 1415, 1428-29 (5th Cir. 1996).

Signed, this the 24th day of April, 2015.

/s/ *Robert H. Walker*
ROBERT H. WALKER
UNITED STATES MAGISTRATE JUDGE